109 So.2d 120 (1959)
Herbert P. LAMBERT
v.
Carson ROGERS et al.
No. 20640.
Court of Appeal of Louisiana, Orleans.
February 2, 1959.
Rehearing Denied March 2, 1959.
*121 Adams & Reese, New Orleans, for defendants-appellants.
Porteous & Johnson and Parnell J. Hyland, New Orleans, for plaintiff-appellee.
JANVIER, Judge.
At about half past five o'clock on the afternoon of December 28, 1952, there was a collision between two motor trucks in the intersection of Constance and Lyons Streets, in New Orleans. This suit is the result of that accident.
One of the trucks was owned and was being driven by one of the defendants, Carson Rogers, and the other was owned by Herbert P. Lambert and was being operated in the course of his employment by Henry F. Gieseler, an employee of Lambert who conducted a plumbing business in New Orleans.
Rogers carried liability insurance in the Southern Farm Bureau Casualty Insurance Company, and Lambert brought this suit against Rogers and the said insurer. He seeks to collect for the loss sustained as a result of the practical destruction of his truck. It was stipulated that the truck, except for its salvage value, was a total loss and that the recovery by Lambert, if any, should be $620, which represents the difference between the value before the accident and the salvage value.
There was judgment in the Civil District Court in favor of Lambert for $620, with interest and costs, solidarily against both defendants. They have appealed.
On Constance Street vehicles are permitted to travel in an uptown direction only. On that street the Lambert truck was being driven by Gieseler in the proper uptown direction. The Rogers truck, driven by him, was on Lyons Street on which vehicles are permitted to operate in either direction, and Rogers was on his way out that street towards the Mississippi River, so that, as the vehicles approached the intersection, the Rogers truck was to the right of the Lambert truck.
There are no traffic signs on that corner and there is a small store building which was to the right of Gieseler and to the left of Rogers. This building was on the property line of each of the streets and would have made the corner what is called "blind" except for the fact that the extreme corner of the building did not extend entirely to the respective property lines, being cut away for a distance of three or four feet on each side. This was done so that the door might be set at an angle across from one property line to the other.
The District Judge stated that he had visited the corner in order to determine whether it could be characterized as "blind" and stated that in his opinion it was not a blind corner. We find ourselves unable to agree and conclude that not only, as a result of the building, was the view of each driver towards the other obstructed, but that further obstruction resulted from the fact that there were other vehicles parked on the right side of Constance Street near the corner and that these vehicles intercepted the views of the drivers.
That the corner was a "blind" one is also made evident by the testimony of Gieseler, who was driving the plaintiff's truck, for when he was asked whether or not he could see to his right, he answered that there was a building on the corner, and when asked whether it was "right out at the corner," he answered, "yes". He was then asked whether the building "made the corner blind * * *", and he answered: "Yes. In other words, you had to be right up on the corner to be able to see."
Gieseler said that, as he approached the corner, the speed of his truck was about 20 or 21 miles an hour, and he does not remember whether he reduced the speed, but that he usually did. He said that he looked to the right and could see into Lyons *122 Street for about a half a block and that he saw no other vehicle and proceeded into the intersection and had almost completed the crossing when his truck was struck by the Rogers truck near the right rear fender and the rear bumper. He said that, as a matter of fact, he did not see the Rogers truck at all until it struck his truck.
Gieseler's son, who was on the front seat alongside him, said that the speed of their truck was probably around 20 miles an hour, and, though he looked to his right and could see probably a quarter of a block into Lyons Street, he saw no other vehicle and in fact did not see the Rogers truck until after feeling the impact.
Rogers says that he looked to his left and saw no vehicle and that he stopped before entering the intersection.
Counsel for the defendants concede that Rogers was negligent in entering the intersection without seeing the truck of plaintiff on Constance Street, but they maintain that, in spite of this negligence, there should be no recovery by Lambert because of the contributory negligence of Gieseler who was driving Lambert's truck and was at the time admittedly acting within the scope of his employment.
If the corner was a blind one, as it obviously was, Gieseler should not have driven his truck into the intersection at a speed of about 20 or 21 miles an hour. At such a corner if the driver of either vehicle exercises reasonable care there can be no accident. Each driver approaching such a corner must do so at a reasonable speed and must make certain before entering the intersection that there is no other vehicle about to enter it. Particularly is this true with reference to Gieseler in the instant case since the Rogers truck approached the intersection from Gieseler's right. LSA-R.S. 32:237, subd. A.
In Cappo v. Baker, La.App., 91 So.2d 611, we said:
"This is a shining example of a case where both drivers were clearly concurrently negligent. Neither of them saw the other car until reaching a point a few feet from the intersection, and then, of course, it was too late for either to do anything to prevent a crash. Had one or the other taken the slightest precautions in approaching the dangerous corner, there would have been no mishap."
In Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App., 70 So.2d 235, 237, the Court of Appeal for the Second Circuit said:
"We think both drivers were negligent in that each failed to see that which could and should have been seen, an obligation which has been many times reiterated by the courts of this state. The fact that the view of traffic approaching the intersection from the respective directions of vehicles here involved was obstructed imposed a greater than usual or ordinary degree of care upon both drivers. As we observed in Wilson v. Yellow Cab Co. [La.App., 64 So.2d 463], supra, citing therein Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148:
"`The greater the danger the greater the necessity for caution.' [64 So.2d 466]".
Counsel for plaintiff relies upon the doctrine that, where one vehicle has preempted an intersection, the other must yield and permit the completion of the crossing. This doctrine has no application where the claimed preemption results from improper speed in violation of the dictates of common prudence.
The judgment appealed from is annulled, avoided and reversed and plaintiff's suit is dismissed at his cost.
Reversed.