LUTHER E. HALL, Judge pro tern.
This suit was instituted in the Civil District Court for the Parish of Orleans by “J. Weldon Dalton, father of the minor child, J. Weldon Dalton, Jr.”, praying judgment “in favor of your petitioner, J. Weldon Dalton, father of the minor J. Weldon Dalton, Jr.”, in the sum of $5,194.-78, as a consequence of an October 13,, 1958, intersectional collision between automobiles driven by plaintiff’s minor son and! defendant.
The petition itemized the damages sought as $25 for medical expenses, $169.78 for damages to the vehicle driven by the minor son, $3,000 for physical pain and suffering and $2,000 for mental anguish and pain.
Default judgment against defendant was rendered on January 13, 1959, “in favor of the plaintiff, J. Weldon Dalton,” for the sum of $194.78 — the total of the medical and property damage items — and further “in favor of plaintiff, J. Weldon Dalton, for the use and benefit of the minor J. Weldon Dalton, Jr,” in the sum of $500, both with legal interest from judicial demand until paid and costs.
On February 5, 1959, a motion by defendant for a suspensive appeal was granted, and in due course this appeal was lodged in this Court.
On November 17, 1959, the defendant-appellant filed a plea of res judicata in this Court based upon a judgment of the First City Court of the city of New Orleans in the matter entitled “Adolph C. Suhren v. J. Weldon Dalton”, which judgment was also rendered by default and signed on April 24, 1959. No appeal was taken from this judgment and the same is now final.
This plea having been referred to the merits, both the plea and the merits are before us for consideration now.
On the Exception of Res Judicata
From the petition and judgment in the First City Court incorporated in ex-ceptor’s plea of res judicata it is seen that Adolph C. Suhren sued J. Weldon Dalton for property damage to his automobile arising out of the same accident involved in *458 this case. The minor, J. Weldon Dalton, Jr., was not sued and it is clear that the father, J. Weldon Dalton, was sued in his individual capacity only.
The basis of the plea of res judicata is Article 2286 of the LSA-Civil Code which reads as follows:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties and formed by them against each other in the same quality.” (Emphasis added.)
Without considering whether the thing demanded and the cause of action are the same in the two cases, we think it clear that the demand is not formed by the parties against each other in the same quality. In the case on appeal before us the “quality” of the father’s participation is as administrator of his minor son’s estate (Article 221, LSA-Civil Code), and in the City Court case the “quality” in which he was sued was his own individual capacity.
Exceptor misconstrues Article 2286 to refer “to the quality of the demand” rather than to the quality of the parties. Our Supreme Court has construed the article to refer to the capacity of the parties.
In Slocomb v. DeLizardi, 21 La.Ann. 355, 356, it said:
“But in order to justify courts of justice to reject a demand as contrary to the authority of the thing adjudged, a legal verity, it is necessary that the thing demanded should be the same as in the first suit, that the demand should be founded on the same cause of action, and that the contest should be between the same parties, acting in the same qualities. Thus, identity of the things demanded, identity of the causes of action, and identity of the parties and of their qualities are the conditions upon which alone the legal presumption is established in favor of the thing adjudged.” (Emphasis added.)
Further clarifying the matter, the Court adds at page 357:
“The demand must be between the same parties, and formed by them against each other in the same quality.
“Lizardi was sued in the first suit in his fiduciary capacity as liquidator; in this cause, he is sued personally as a general partner of a commercial firm.”
v
See also State ex rel. Collens v. Jumel, 30 La.Ann. 861, where it is said:
“The plea of res adjudicata is not tenable. To sustain that plea, there must be an identity of parties, of capacity, of object, and of cause of action.”
And Planiol, in treating of the identity of persons required for the validity of the exception of res judicata, apparently considers it no longer open to question that the identity is not merely a material identity of parties. Criticizing the other commentators of the Code Napoleon for the time devoted to this question, Planiol relegates his entire treatment to a footnote, found on page 36 of the Louisiana Law Institute translation, Vol. 2, Part 1:
“Is it necessary now to enter into the long explanations which are traditional here, in order to observe that the identity of the parties in the second case, which is necessary in order that the exception of res judicata may be used, does not mean the material identity of persons, but identity of capacity or quality ? Thus a tutor, after having lost a case brought in the name of his ward, may recommence it in his own name, without being subject to the defense of res judicata because he is not acting in the same capacity; it is not the same person who is pleading (Cass., 28 Aug. 1849, D. 50.1.57).”
*459 The demands in the two suits not having been formed by the parties against each other in the same quality one of the essential elements giving rise to the authority of the thing adjudged is lacking. The plea of res judicata is therefore overruled.
On the Merits
For the same reason that res judi-cata does not apply in this matter, that part of the default judgment of the District Court which awarded damages to Dalton in his individual capacity must be reversed, because Dalton individually was not a party to the suit. Nowhere in the petition — not even in the prayer — does Dalton, Sr., appear except as “father of the minor child”, and “for the use and benefit of the minor”.
Defendant also seeks to reverse that part of the default judgment awarding damages for the minor’s personal injuries on the ground that there is no proof in the record of negligence on the part of defendant.
We repeat that this was a judgment by default and the only evidence touching the accident itself was given by the minor, J. Weldon Dalton, Jr. Having explained that he was driving on South Johnson Street towards Canal Street, and was nearing the corner of Jefferson Avenue, Dalton, Jr., testified:
“A. I came to that corner, and I stopped. I came on across. It was clear as far as I could see, because there were shrubs around, and, as I came across I didn’t see anybody; so as I came, when I came across, the car that hit me — -I didn’t see him — I presume that he was down a distance where I couldn’t see him.
“Q. Just take your time and don’t get excited now.
“A. So as I came across I saw him coming down on me by the time I got about halfway out in the middle of the street; I wanted to try and get out his way, so I turned my wheels to the left.”
The witness testified he had crossed the first roadway and the neutral ground part of the street, and was about five or ten feet into the second roadway of Jefferson Avenue when struck on the right rear of his car.
The petition alleged that plaintiff’s son had pre-empted the intersection, and alleged that defendant failed to keep a proper lookout, was speeding, and was operating his vehicle in a careless and reckless manner. Clearly, the only allegation as to which there is any evidence at all in the record is that of pre-emption. The question that is presented to this Court is whether that evidence was sufficient to show negligence on the part of the defendant.
The basis of the doctrine of preemption is fully set forth in Dodd v. Bass, La.App., 76 So.2d 572, 574:
“ * * * While it is true it has been repeatedly held the automobile which first enters the intersection has the right to proceed, having the right of way over any automobile approaching at right angles, and that the driver who does not respect the legal right of the automobile which first entered the intersection to proceed through the intersection in safety, is negligent and that this is so even though the car entering the intersection secondly in point of time is being driven on a right of way street, * * * we are nonetheless of the opinion the rule so stated has no application in the instant case. We so resolve for the evidence conclusively shows the two automobiles here involved entered the intersection at approximately the same time. That the Dodd car may have proceeded a few' feet beyond the center of Robert Street is not proof it preempted the intersection, but rather, we think, it shows the contrary. The rule, we think, with special application under the circumstances here presented, and enunciated on many occasions, is that preemption of an intersection under the provisions established by our jurisprudence, does *460 not mean the prior entry of the vehicle simply by a matter of a few feet, or in relation to the time element, by a fraction of a second ahead of another vehicle, but in order to support a charge of negligence such preemption must be construed to mean an entry into an intersection with the opportunity of ■clearing the same without obstruction of the path of another vehicle under reasonable and normal circumstances and conditions.”
And in Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App., 70 So.2d 235, 237, the Court points out:
“Under the well-established interpretation with reference to the conflict of rights of automobile vehicle drivers, it is essential to again determine and apply the legal definition of preemption. Notwithstanding the fact that there are some pronouncements in some cases in the jurisprudence of our state which would appear to define preemption as dependent upon a mere showing of first entrance into an intersection, we think by far the better rule, and one which is now completely accepted, clearly requires the interpretation of preemption to be the entrance of an intersection with the normal and reasonable opportunity and expectation of clearing such intersection without obstruction to the crossing thereof by other vehicles.” See also Toups v. Trent, La.App., 85 So. 2d 96.
In view of the settled rule that preemption does not result from merely entering an intersection first, we find that plaintiff has failed to establish pre-emption in this case. At best, plaintiff’s son’s testimony suggests no more than that he did, in fact, get into the intersection a few feet before being hit by defendant. He certainly did not establish that he entered the intersection sufficiently in advance of defendant so as to acquire the right-of-way; and therefore he failed to prove that defendant was negligent in failing to respect and yield to plaintiff’s son’s supposed superior right.
There is no evidence whatsoever to support the other allegations of negligence, and the evidence is insufficient to support the allegation that plaintiff’s son pre-empted the intersection.
Accordingly the judgment appealed from is reversed and plaintiff’s suit is dismissed at his cost.
Reversed.