SAMUEL, Judge.
This is a suit for personal injuries and property damages resulting from an inter-sectional automobile collision involving two cars. Plaintiff was the driver of one of those cars; defendant was the driver of the other. Defendant’s answer denies negligence on his part and alternatively pleads contributory negligence on the part of plaintiff. The trial court judgment is in favor of plaintiff in the sum of $515.96, the stipulated amount of damage to the plaintiff vehicle. Only defendant has appealed therefrom and plaintiff has not answered the appeal. In this court defendant concedes his negligence and the sole question presented is whether or not plaintiff was guilty of contributory negligence proximately causing the accident and therefore barring a recovery by him.
The accident occurred on September 18, 1965, shortly after Hurricane Betsy, at approximately 7:15 p. m. in the intersection of Elysian Fields Avenue and North Miro Street in the City of New Orleans. It was dark and both vehicles had on their headlights. Due to the hurricane the signal lights controlling traffic at the intersection, and the street lights in the immediate vicinity, were inoperative. Temporary traffic controls in the form of stop signs requiring vehicles on both streets to stop before entering the intersection had been wired to the semaphore standards by city employees as a substitute for the inoperative traffic lights. However, on the night of the accident the stop sign designated to face northbound traffic on Elysian Fields was turned or twisted so that it faced traffic approaching, the intersection on North Miro.
Defendant was traveling north in the lane next to the neutral ground on Elysian Fields, a wide boulevard with three lanes for moving traffic on each side of a neutral ground. Plaintiff was traveling in a westerly direction on North Miro, a one-way street.
Defendant, who was not familiar with the intersection had stopped for a signal light which was operating at North Gal-vez, one block south of North Miro. Two cars, one in each of the two lanes to his right, also stopped for that light. When it changed the three vehicles proceeded forward with defendant a short distance in the rear of the other two. Defendant saw those other two cars slow down and *504 stop at North Miro; he also saw an automobile which he testified was stopped on North Miro. But although he did slow down to some extent (his speed was approximately 25 miles per hour), he did not stop; he continued forward in his lane and into the intersection. He first saw plaintiff’s vehicle directly in his path, a distance of about 12 feet away, after the latter had crossed the two traffic lanes to defendant’s right in front of the cars stopped in those lanes and had entered the lane in which defendant was traveling. The front of defendant’s car struck the front left side of the plaintiff vehicle.
Plaintiff testified: He was familiar with the intersection. Traffic on the two streets alternately was yielding to one another so that each could cross. His vehicle was in a line of five or six stopped automobiles waiting to cross Elysian Fields. He proceeded forward slowly as each car ahead of him was given an opportunity to cross the intersection one at a time. When he had progressed to first position he stopped and waited for his opportunity to cross. He proceeded to do so at approximately 10 miles per hour when the two automobiles in the two outer Elysian Fields lanes, that is the lanes away from the neutral ground and closer to him, stopped to allow him to pass. After starting across he looked only straight ahead and did not again look to his left; assuming that all traffic on Elysian Fields had stopped or would stop to allow him to cross, he did not check the third or neutral ground lane of Elysian Fields. He did not see the defendant vehicle until it struck him after he had entered that neutral ground lane.
At one point in his testimony plaintiff stated, in effect, he knew a stop sign controlled traffic on North Miro after the signal light had become inoperative as a result of the hurricane and assumed that a stop sign also had been placed on Elysian Fields because the cars on the latter .street were stopping. But he also testified he had not seen a stop sign on Elysian Fields and did not know whether traffic on that avenue was obligated to stop for the North Miro intersection. We are satisfied- that plaintiff did not know whether or not a stop sign controlled traffic on Elysian Fields at its intersection with North Miro at the time of the accident.
A motorist is under a continuing duty to exercise care and caution; and he is required to operate his vehicle with due regard to existing conditions and to take an unusual or dangerous traffic situation into consideration. Soprano v. State Farm Mutual Automobile Ins. Co., 246 La. 524, 165 So.2d 308; Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148; Valenti v. Allstate Insurance Company, La.App., 156 So.2d 87. Accordingly, the courts consistently have held that a motorist who, in crossing an intersection, passes a lane or lanes of stationary vehicles without observing an open lane of traffic through which another vehicle could approach, must be deemed guilty of negligence. Kerner v. Lumbermens Mutual Casualty Co., La.App., 172 So.2d 711; LeBreton v. Ballanga, La.App., 146 So.2d 58; Bruno v. Anderson, La.App., 123 So.2d 654; Eschmann v. New Amsterdam Casualty Company, La.App., 110 So.2d 135; Floyd v. Roberts, La.App., 72 So.2d 18; Indovina v. Logrande, La.App., 70 So.2d 456; Schroeder v. Mounes, La.App., 52 So.2d 67.
As this court said in Schroeder v. Mounes, supra, 69:
“As we have already said, the situation was unusual, and under the circumstances, each driver should have exercised the utmost caution. Neither did. Schroeder could easily have noticed that across the two lanes of traffic, which were stationary, there was a narrow open lane through which a car might cross Canal Street and, on other hand, Mounes could easily see that, though there were two lanes of stationary traffic, there was still an open lane through which another vehicle could approach.
*505 Both drivers should have taken these facts into consideration and had either done so the accident would not have occurred.”
The foregoing is particularly apropos in the instant case. Here the accident occurred at night; the signal light at the intersection, and the street lights in the immediate vicinity, were inoperative; and the traffic situation following the hurricane, particularly at the intersection involved, called for extreme caution on the part of all motorists.
Plaintiff knew there were three lanes for moving traffic on each side of the Elysian Fields neutral ground. He could and should have observed whether or not there was traffic in the third or neutral ground lane. But by his own testimony he never looked to his left after he ■ started across the intersection; he made no effort to ascertain if traffic was approaching in the neutral ground lane. His failure to do so constitutes negligence which,was a proximate cause of the accident and prevents a recovery by him.
We do not agree with a contention made by plaintiff that, because a stop sign had been placed on Elysian Fields requiring traffic on that street to stop before entering the intersection, he had the right to proceed on the assumption that approaching Elysian Fields traffic would obey the sign and stop. As we have pointed out, plaintiff did not know the Elysian Fields traffic was controlled by a stop sign and therefore he could not have anticipated traffic on that street would stop before entering the intersection. Soprano v. State Farm Mutual Automobile Ins. Co., supra; Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment in favor of the defendant, Arthur L. Schmitt, and against the plaintiff, Lonnie R. Lilly, dismissing the latter’s suit; costs in both courts to be paid by the plaintiff, Lonnie R. Lilly.
Reversed.